## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

DANIELLE WEIN,

               **Plaintiff,**              **CIVIL ACTION NO. 16-cv-11816**

          **v.**                      **DISTRICT JUDGE ARTHUR J. TARNOW**

**COMMISSIONER OF**             **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

               **Defendant.**
_____/

## REPORT AND RECOMMENDATION

Plaintiff Danielle Wein seeks judicial review of Defendant Commissioner of Social Security's determination that she is not entitled to social security benefits for her physical and mental impairments under 42 U.S.C. § 405(g).  (Docket no. 1.)  Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 17) and Defendant's Motion for Summary Judgment (docket no. 18).  The motions have been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  (Docket no. 4.)  The Court has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and issues this Report and Recommendation.

## I.     RECOMMENDATION

For the reasons that follow, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 17) be **DENIED** and Defendant's Motion for Summary Judgment (docket no. 18) be **GRANTED**.

## II.      PROCEDURAL HISTORY

Plaintiff protectively filed applications for a period of disability, disability insurance benefits, and supplemental security income on January 7, 2013, alleging that she has been disabled since May 7, 2011, due to bulging discs in her neck, fibromyalgia, depression, back pain, shoulder problems, numbness in her arms and legs, debilitating headaches, anxiety, panic attacks, constant pain, memory problems, and an inability to sit or lie down for periods of time. (TR 236-43, 262, 265.)  The Social Security Administration denied Plaintiff's claims on July 25, 2013, and Plaintiff requested a *de novo* hearing.  (TR 133-72, 196-97.)  On August 15, 2014, Plaintiff appeared with a representative and testified at the hearing before Administrative Law Judge (ALJ) B. Lloyd Blair.  (TR 102-32.)  The ALJ subsequently issued an unfavorable decision on Plaintiff's claims on December 24, 2014.  (TR 80-101.)  The Appeals Council declined to review the ALJ's decision (TR 1-7), and Plaintiff commenced this action for judicial review.  The parties then filed cross motions for summary judgment, which are currently before the Court.

## III.     HEARING TESTIMONY AND MEDICAL EVIDENCE

In her brief, Plaintiff sets forth the procedural history of this matter and provides a brief statement of facts, which primarily consists of a summary of her subjective complaints.  (Docket no. 17 at 8-10.)  Defendant summarized Plaintiff's medical record in her brief (docket no. 18 at 6-14), and the ALJ summarized Plaintiff's hearing testimony, Plaintiff's medical record, and the vocational expert's (VE's) testimony in his decision (TR 89-95).  Having conducted an independent review of Plaintiff's medical record and the hearing transcript, the undersigned finds that there are no material inconsistencies between the ALJ's summary of the facts and the record.  Therefore, in lieu of re-summarizing this information, the undersigned will incorporate the ALJ's

factual recitation by reference and will also make references and citations to the record as necessary to address the parties' arguments throughout this Report and Recommendation.

## IV. ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of May 7, 2011, and that Plaintiff suffered from the following severe impairments: chronic pain syndrome, mild degenerative changes of the cervical spine, bursitis of the right shoulder, migraines, depressive disorder, and anxiety disorder. (TR 85-86.) The ALJ also found that Plaintiff's Bell's palsy and obesity were not severe impairments and that Plaintiff's fibromyalgia was not a medically determinable impairment. (TR 86.) Additionally, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR 86-88.) The ALJ then found that Plaintiff had the following RFC:

> [C]laimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), as the claimant can lift and/or carry 10 pounds occasionally; stand and/or walk for 2 hours in an 8-hour workday; and sit for 6 hours in an 8-hour workday. The claimant needs the ability to stand for ten minutes at a time at thirty-minute intervals. The claimant can never climb ladders, ropes or scaffolds but can occasionally climb ramps and stairs; and occasionally balance, stoop, kneel, crouch, and crawl. The claimant must avoid walking on uneven terrain; avoid concentrated exposure to vibration, extreme cold or humidity; and never use torque, pneumatic or power tools. The claimant can only occasionally reach overhead with the right upper extremity; and frequently handle and finger. The claimant can occasionally bend, twist or turn at the neck or waist. The claimant cannot perform an[y] commercial driving; and requires the use of a cane for ambulation. The claimant is limited to simple, unskilled work with an SVP of 1 or 2; and work involving only 1, 2 or 3 step instructions. The claimant requires work not involving concentration on detailed or precision tasks; multi-tasking; reading; computing; calculating or problem solving. The claimant requires work that does not involve[] teamwork or working in close proximity of coworkers. The claimant can have only brief or superficial contact with the general public.

(TR 88-95.)  Subsequently, in reliance on the VE's opinion, the ALJ determined that Plaintiff was capable of performing her past relevant work as a hand painter.  (TR 95.)  Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time from May 7, 2011, through the date of the decision.  (TR 84, 96.)

## V. LAW AND ANALYSIS

### A. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions.  Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997).  Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528.  It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility.  *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole.  *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).  If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion.  *See Her v. Comm'r*, 203 F.3d 388,

389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts"). "But '[a]n ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013) (quoting *Cole v. Astrue,* 661 F.3d 931, 937 (6th Cir. 2011)).

**B.      Framework for Social Security Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis.  In the first four steps, Plaintiff was required to show that:

(1)      Plaintiff was not presently engaged in substantial gainful employment; and

(2)      Plaintiff suffered from a severe impairment; and

(3)      the impairment met or was medically equal to a "listed impairment;" or

(4)      Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f).  If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work.  If not, Plaintiff would be deemed disabled.  *See id.* at § 404.1520(g).  The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform."  *Her*, 203 F.3d at 391.  To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs."  *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir.

1987).   This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'"   *Id.* (citations omitted).

## C.    Analysis

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)."   *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)).   Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing.   42 U.S.C. § 405(g).   Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration."   *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

Plaintiff asserts that this matter should be reversed for an award of benefits under sentence four because (1) "[t]he ALJ failed to properly evaluate [Plaintiff's] severe impairments at step two;" (2) "[t]he ALJ failed to properly evaluate [Plaintiff's] severe physical impairments and their prospecitive [sic] listings at step three;" and (3) "[t]he ALJ's residual functional capacity (RFC) determination does not comply with Social Security rules and regulations." (Docket no. 16 at 11-28.)

*The ALJ's Step-Two Determination*

Plaintiff argues that the ALJ erred by finding that her obesity was not a severe impairment and her fibromyalgia was not a medically determinable impairment, and that he did so without proper evaluation of the same.  (Docket no. 17 at 11-20.)  A severe impairment or combination of impairments is one that significantly limits the claimant's physical or mental ability to perform basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  An impairment will be considered non-severe only if it is a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience."  *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 90 (6th Cir. 1985) (citation omitted).  But the step-two severity analysis is simply a threshold determination.  It is well established that "once any one impairment is found to be severe, the ALJ must consider both severe and nonsevere impairments in the subsequent steps," and it becomes "legally irrelevant" that other impairments are not considered severe.  *McGlothin v. Comm'r of Soc. Sec.*, 299 F. App'x 516, 522 (6th Cir. 2008) (citing *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008)).  This is so because the second step is designed simply to screen out and dispose of baseless claims.  *Anthony*, 266 F. App'x at 457.  Stated differently, as long as the ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, the ALJ's failure to find additional severe impairments at step two does not constitute reversible error.  *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).

Here, in assessing Plaintiff's impairments at step two of the sequential evaluation process, the ALJ determined that Plaintiff suffered from the severe impairments of chronic pain syndrome, mild degenerative changes of the cervical spine, bursitis of the right shoulder,

migraines, depressive disorder, and anxiety disorder. (TR 86.) The ALJ then determined that Plaintiff's Bell's palsy and obesity were not severe impairments and that Plaintiff's fibromyalgia was not a medically determinable impairment. (TR 86.) The ALJ, however, did not discuss Plaintiff's obesity or fibromyalgia at all of the remaining steps of the sequential evaluation process. Accordingly, the ALJ's failure to categorize Plaintiff's obesity and fibromyalgia as severe impairments is not harmless under *McGlothin* and *Maziarz*, and the ALJ's reasoning in this regard must be further evaluated for reversible error.

a.    Plaintiff's Obesity

Social Security Ruling (SSR) 02-1p provides guidance concerning the evaluation of obesity in disability claims. *Titles II & XVI: Evaluation of Obesity*, SSR 02-1p, 2002 WL 34686281 (S.S.A. Sept. 12, 2002). SSR 02-1p classifies individuals with regard to obesity by considering their Body Mass Index (BMI). *Id*. at *2. Individuals with a BMI greater than or equal to 30 are considered "obese," with those above a BMI of 40 having the most "extreme" type of obesity with the greatest risk for developing obesity-related impairments. *Id*. Nevertheless, "[t]here is no specific level of weight or BMI that equates with a 'severe' or a 'not severe' impairment." *Id*. at 4. "Neither do descriptive terms for levels of obesity (e.g., 'severe,' 'extreme,' or 'morbid' obesity) establish whether obesity is or is not a 'severe' impairment for disability program purposes." *Id*.

In determining that Plaintiff's obesity is not a severe impairment, the ALJ provided the following explanation:

> Although, the claimant has a BMI of 33.1, 5'1", 175 pounds, it is not considered a severe impairment pursuant to SSR 02-1p, as it is only a slight abnormality that has no more than a minimal effect on the individual's ability to do basic work activities. The claimant has not complained of any specific limitations related to her weight.

(TR 86.)

Plaintiff is assertedly perturbed by the ALJ's failure to use the word "obesity" in the explanation cited above. (Docket no. 17 at 12.) She claims that because the ALJ did not explicitly use the word, "readers must assume that what the ALJ is referring to is actually obesity." (*Id.*) She also purports to be perplexed by the ALJ's failure to label her "BMI/height/weight condition" as "obesity" because each of her BMI scores fall under the definition of obesity as defined by SSR 02-1p. (*Id.* at 12-13.) Plaintiff, however, cites no authority for reversible error in this regard, and the Court finds none.

Next, Plaintiff asserts that it is unclear whether the ALJ's explanation is factual, accurate, or supported by substantial evidence because he does not cite to any record that indicates that Plaintiff's BMI, height, and weight are 33.1, 5'1", or 175 pounds. (Docket no. 17 at 13.) Plaintiff claims that, in fact, there are medical records that indicate that her obesity is defined by much higher BMIs than 33.1. (*Id.*) She then cites the progress notes from her treatment with Dr. Virendra S. Mehta, who recorded Plaintiff's height, weight, and BMI as follows: (1) April 3, 2012 – "Ht 52, Wt 240, BMI 62.40;" (2) May 24, 2012 – "Ht 52, Wt 227, BMI 59.02;" and (3) October 9, 2012 – "Ht 52, Wt 220, BMI 57.20." (*Id.* (citing TR 452, 491, 493).) According to Plaintiff, the discrepancy between the ALJ's assessment of Plaintiff's BMI and the BMIs assessed by Dr. Mehta is a problem under SSR 02-1p. (*Id.*) Plaintiff expounds that the BMI score cited by the ALJ represents "Level I" obesity under SSR 02-1p, while the BMI scores assessed by Dr. Mehta represent "Level III" obesity under SSR 02-1p, the latter of which represents "the greatest risk for developing obesity-related impairments." (*Id.* at 14 (quoting SSR 02-1p, 2002 WL 34686281, at *2).) She argues that had the ALJ cited the higher BMI

9

scores assessed by Dr. Mehta, he "would have had to explain whether Plaintiff's obesity did, indeed, aid in the development of any of her other impairments." (*Id.*)

Plaintiff's arguments are partially unavailing. While Plaintiff purports to have no clue as to how the ALJ determined her height and weight to be 5'1" and 175 pounds, a cursory review of the record in this matter reveals that these numbers come from Plaintiff's own testimony at the administrative hearing. (TR 107.) Additionally, as Defendant points out, Dr. Mehta apparently miscalculated Plaintiff's BMI scores; instead of calculating Plaintiff's BMI using a height of 5'2", he calculated it using a height of 52 inches, or 4'4". (*See* docket no. 18 at 15.) Had Dr. Mehta correctly calculated Plaintiff's BMI using a height of 5'2", he would have listed Plaintiff's BMI as 43.9 on April 3, 2012, 41.5 on May 24, 2012, and 40.2 on October 9, 2012. *See* National Heart, Lung, and Blood Institute, "Calculate Your Body Mass Index," https://www.nhlbi.nih.gov/health/educational/lose_wt/BMI/bmicalc.htm (visited Aug. 2, 2017). Nevertheless, because Plaintiff's re-calculated BMIs are still greater than 40, they still represent "Level III" obesity – "the greatest risk for developing obesity-related impairments" – under SSR 02-1p, and Plaintiff's argument holds some weight. The ALJ's explanation for finding that Plaintiff's obesity does not constitute a severe impairment must therefore be further examined.

In evaluating the effects of obesity, SSR 02-1p "does not mandate a particular mode of analysis," but it does "direct[] an ALJ to consider the claimant's obesity, in combination with other impairments, at all stages of the sequential evaluation." *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 577 (6th Cir. 2009) (citation and internal quotation marks omitted). SSR 02-1p, however, "does nothing to relieve [a claimant] of the burden of marshaling competent medical opinion[s] and evidence to show *specifically* how her obesity exacerbated her other impairments, or interacted with them, to render her incapable of all suitable work." *Smith v. Astrue*, 639 F.

Supp. 2d 836, 846 (W.D. Mich. 2009) (emphasis in original).  *See also Nejat*, 359 F. App'x at 577 (ALJ's failure to consider claimant's alleged obesity was not erroneous where claimant failed to list obesity in his application and where there was scant evidence of obesity in the record).

Here, as the ALJ explained in determining that Plaintiff's obesity is not a severe impairment, Plaintiff did not complain of any specific limitations related to her weight at the administrative hearing level.  (*See* TR 86.)  Also, Plaintiff did not list obesity in her application, and in her instant brief, she does not assert that her obesity causes her any additional functional limitations than those assessed by the ALJ.  Accordingly, under *Smith* and *Nejat,* Plaintiff has not met her burden in this regard, and the ALJ's failure to categorize Plaintiff's obesity as a severe impairment or to consider Plaintiff's obesity at the remaining steps of the sequential evaluation process does not constitute reversible error.  Plaintiff's Motion should be denied with regard to this issue.

b.    Plaintiff's Fibromyalgia

The ALJ evaluated Plaintiff's alleged fibromyalgia at step two of the sequential evaluation process as follows:

> The claimant has a non-medically determinable impairment of fibromyalgia.  The claimant testified that she suffers from fibromyalgia.  Pursuant to SSR 12-2p, fibromyalgia is a medically determinable impairment when it is established by appropriate medical evidence.  The claimant must show the following: (1) history of widespread pain that has persisted for at least 3 months; (2) at least 11 tender points on physical exam; and (3) evidence that other disorders that could cause the symptoms or signs were excluded.  There is no tender point testing in the record.  Moreover, there is no real mention of fibromyalgia other than in September 2012 when she stated the doctor recently diagnosed her with it (Exhibit 5F/2-4).  The undersigned notes that there is no actual diagnosis either.

(TR 86.)

Plaintiff argues that the ALJ's evaluation of her fibromyalgia is improper because it is extremely short, lacks explanation sufficient to support the finding, and omits citations to the record. (Docket no. 17 at 15.) Plaintiff also argues that the ALJ's explanation includes inaccurate statements regarding her fibromyalgia diagnosis. (*Id*.) Plaintiff explains that the ALJ's statements are not accurate because her doctor, Ram Garg, M.D., repeatedly included fibromyalgia in his list of diagnoses, and he noted that "plaintiff was recently diagnosed with fibromyalgia," not that Plaintiff told him that she was diagnosed with fibromyalgia, as the ALJ stated. (*Id*. at 15-16 (citing TR 86, 423-28, 430-32, 436-38, 443, 446-48).) She continues that, "[a]lthough it is slightly unclear whether Dr. Garg was the original doctor who diagnosed Plaintiff" with fibromyalgia, it is apparent from his treatment notes that he did diagnose her with it as well. (*Id*. at 16.) Plaintiff further argues that the ALJ failed to properly evaluate Plaintiff's fibromyalgia under the two sets of criteria set forth in SSR 12-2p that are used to determine whether a claimant's fibromyalgia is a medically determinable impairment. (*Id*. at 16-17.) Finally, Plaintiff argues that if the ALJ was so skeptical about whether Plaintiff's fibromyalgia was a medically determinable impairment, he should have attempted to obtain further information to aid his analysis in order to make a proper determination. (*Id*. at 17-18.)

SSR 12-2p "provides guidance on how [the Commissioner will] develop evidence to establish that a person has a medically determinable impairment (MDI) of fibromyalgia (FM), and how [the Commissioner will] evaluate [fibromyalgia] in disability claims and continuing disability reviews under titles II and XVI of the Social Security Act (Act)." *Titles II & XVI: Evaluation of Fibromyalgia,* SSR 12-2p, 2012 WL 3104869, at *1 (S.S.A. July 25, 2012). "SSR 12–2p states that fibromyalgia should be analyzed under the traditional five-step evaluation process and provides binding guidance for all steps of the process that the ALJ must

follow." *Kado v. Colvin*, No. 1:15-cv-02044-DAP, 2016 WL 6067779, at *6 (N.D. Ohio Oct. 17, 2016) (citing SSR 12-2p, 2012 WL 3104869, at *5–6). Prior to evaluating fibromyalgia under the sequential evaluation process, however, the Commissioner must first determine whether a person's fibromyalgia is a medically determinable impairment. *See* SSR 12-2p.

Pursuant to SSR 12-2p, fibromyalgia is a medically determinable impairment "when it is established by appropriate medical evidence." SSR 12-2p, 2012 WL 3104869, at *2. The Ruling then provides the following guidance:

> Generally, a person can establish that he or she has an MDI of FM by providing evidence from an acceptable medical source. A licensed physician (a medical or osteopathic doctor) is the only acceptable medical source who can provide such evidence. We cannot rely upon the physician's diagnosis alone. The evidence must document that the physician reviewed the person's medical history and conducted a physical exam. We will review the physician's treatment notes to see if they are consistent with the diagnosis of FM, determine whether the person's symptoms have improved, worsened, or remained stable over time, and establish the physician's assessment over time of the person's physical strength and functional abilities.
>
> . . . We will find that a person has an MDI of FM if the physician diagnosed FM and provides the evidence we describe in section II.A. or section II. B., and the physician's diagnosis is not inconsistent with the other evidence in the person's case record. These sections provide two sets of criteria for diagnosing FM, which we generally base on the 1990 American College of Rheumatology (ACR) Criteria for the Classification of Fibromyalgia (the criteria in section II.A.), or the 2010 ACR Preliminary Diagnostic Criteria (the criteria in section II.B.).

*Id.* (footnotes omitted). Under the 1990 ACR criteria, a person may have a medically determinable impairment of fibromyalgia if he or she has all three of the following: (1) a history of widespread pain; (2) at least 11 positive tender points on physical examination; and (3) evidence that other disorders that could cause the symptoms or signs were excluded. *Id.* at *2-3. A person may have a medically determinable impairment of fibromyalgia under the 2010 ACR criteria if all three of the following requirements are met: (1) a history of widespread pain; (2)

13

repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions; and (3) evidence that other disorders that could cause the repeated manifestations of symptoms, signs, or co-occurring conditions were excluded. *Id*. at *3.

Here, the ALJ found that Plaintiff's alleged fibromyalgia did not meet the 1990 ACR criteria because there is no tender point testing in the record; there is no real mention of fibromyalgia in the record other than in September 2012, when Plaintiff stated that a doctor recently diagnosed her with it; and there is no actual diagnosis of fibromyalgia in the record. (TR 86.) Plaintiff argues that the ALJ is incorrect because Dr. Garg repeatedly included fibromyalgia in his list of Plaintiff's diagnoses, and he noted that "plaintiff was recently diagnosed with fibromyalgia," not that Plaintiff *herself* told him that she was diagnosed with fibromyalgia. (Docket no. 17 at 15-16.) Defendant asserts that Plaintiff's argument fails for two reasons.

First, Defendant argues that the statement at issue appears in the "HPI," or "History of Present Illness" section of Dr. Garg's treatment notes, which means that he was recording Plaintiff's own description of her condition, rather than his own clinical observations. (Docket no. 18 at 17 (citing *McCready v. Comm'r of Soc. Sec.*, No. 10-13893, 2012 WL 1060088, at *8 (E.D. Mich. Mar. 2, 2012) (observations in "history of present illness" section "are merely the narrative description of plaintiff's subjective complaints and symptoms and are not opinions regarding plaintiff's limitations or restrictions")).) The Court agrees with Defendant. Dr. Garg treated Plaintiff on five occasions from August 1, 2012 to September 26, 2012. (TR 422-49.) Dr. Garg's treatment notes for each of these five appointments are substantially similar to each other, and in the "CC/HPI" section of his notes, he repeats the same statement, "Patient was recently Dx with Fibromyalgia." (TR 423, 426, 430, 436, 446.) Because the HPI section is one

14

that reflects Plaintiff's subjective complaints, the ALJ did not mischaracterize this evidence by describing it as Plaintiff's own statement that she had recently been diagnosed with fibromyalgia.

Next, Defendant argues that "even though Dr. Garg included fibromyalgia in the list of diagnoses at the bottom of his progress notes, he did not provide any documentation explaining how he arrived at the diagnosis." (Docket no. 18 at 17.) Defendant then engages in an analysis of Dr. Garg's treatment notes to show that Dr. Garg did not provide documentation to support his fibromyalgia diagnosis under either the 1990 or 2010 ACR criteria, as is required by SSR 12-2p. (*Id*. at 17-19.) But the ALJ did not engage in such a discussion of Dr. Garg's treatment notes, and Defendant's post-hoc rationalization of the ALJ's assessment does not cure the ALJ's failure to recognize that Dr. Garg did actually diagnose Plaintiff with fibromyalgia or his failure to evaluate Plaintiff's fibromyalgia under the 2010 ACR criteria. *See Christephore v. Comm'r of Soc. Sec.*, No. 11-13547, 2012 WL 2274328, at \*6 (E.D. Mich. June 18, 2012) (Roberts, J.) ("[I]t is not the Court's job to conduct a *de novo* review of the evidence or to rubber stamp the ALJ's decision. The Court must ensure both that the ALJ applied the correct legal standard and that his decision is supported by substantial evidence. Moreover, it is the ALJ's rationale that is under review, not defense counsel's."). It would be wholly improper for the court to affirm the ALJ's decision not upon the findings rendered by the ALJ but instead upon Defendant's post-hoc rationalizations for those findings. Accordingly, Defendant's argument in this regard fails.

Nevertheless, Defendant has advanced two additional arguments under which the undersigned finds that any error committed by the ALJ in evaluating Plaintiff's fibromyalgia and determining that it is not a medically determinable impairment is harmless. As Defendant points out, Dr. Garg, the only physician to have purportedly diagnosed Plaintiff with fibromyalgia according to the medical record, opined that Plaintiff's fibromyalgia, along with her other

impairments, did not warrant any functional limitations beyond a need to avoid lifting, pushing, and pulling more than 25 pounds and to avoid repetitive neck motions. (*See* docket no. 18 at 20; TR 425, 428, 432, 438, 448.) Here, the ALJ adopted Dr. Garg's opinion regarding Plaintiff's need to avoid repetitive neck motions, and he assessed greater restrictions than Dr. Garg with regard to Plaintiff's ability to lift, push, and pull. (TR 88.) Presumably, Plaintiff does not object to the ALJ's determination that she has less physical residual functional capacity than that assessed by her treating physician. Moreover, Plaintiff does not indicate what additional functional limitations the ALJ should have assessed to accommodate for her fibromyalgia. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003) (noting that the plaintiff bears the burden of proving the existence and severity of limitations caused by her impairments through step four of the sequential evaluation process); *see also, Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999). Plaintiff has not met her burden here. Accordingly, Plaintiff's Motion regarding the ALJ's step-two determination should be denied.

2.     *The ALJ's Step-Three Determination*

Plaintiff argues that "[t]he ALJ failed to properly evaluate [her] severe physical impairments and their prospective listings at step three." (Docket no. 17 at 20-22.) At the third step of the sequential evaluation process, a claimant will be deemed presumptively disabled and eligible for benefits if his impairment meets or medically equals one of the listings in the Listing of Impairments. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). "When considering presumptive disability at Step Three, an ALJ must analyze the claimant's impairments in relation to the Listed Impairments and give a reasoned explanation of his findings and conclusions in order to facilitate meaningful review." *Christephore v. Comm'r of Soc. Sec.*, No. 11-13547, 2012 WL 2274328, at *6 (E.D. Mich. June 18, 2012) (citing *Reynolds v. Comm'r of Soc. Sec.*,

424 F. App'x 411, 416 (6th Cir. 2011)).  A claimant must satisfy all of the criteria to meet a

listing, or have impairments that are medically equivalent to or equal in severity and duration to

the criteria of a listed impairment.  *Id.*; *Rabbers v. Comm'r,* 582 F.3d 647, 653 (6th Cir. 2009).

"Moreover, all of the criteria must be met concurrently for a period of twelve continuous

months."  *McKeel v. Comm'r of Soc. Sec.*, No. 14-cv-12815, 2015 WL 3932546, at *8 (E.D.

Mich. June 26, 2015) (citing 20 C.F.R. § 404.1525(c)(3), (4); 20 C.F.R. Pt. 404, Subpt. P, App.

1, § 1.00D ("[b]ecause abnormal physical findings may be intermittent, their presence over a

period of time must be established by a record of ongoing management and evaluation")).  It is

the claimant's burden to demonstrate that she meets or equals a listed impairment at the third

step of the sequential evaluation process.  *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

("A claimant must demonstrate that her impairment satisfies the diagnostic description for the

listed impairment in order to be found disabled thereunder.").

With regard to Plaintiff's severe physical impairments at step three of the sequential

evaluation process, the ALJ stated:

> Despite the claimant's diagnosed impairments, the medical evidence does not
> document listing level severity and no acceptable medical source has mentioned
> findings equivalent in severity to the criteria of any listed impairment, either
> individually or in combination.   In making this finding, the undersigned
> considered Listings: 1.02 (major dysfunction of a joint), 1.04 (disorders of the
> spine), 11.03 (non-convulsive epilepsy), and 14.09 (inflammatory arthritis).  As
> for Listing 1.02, the claimant has not shown an inability to perform fine or gross
> manipulation effectively.  The claimant also only has involvement of one of her
> upper extremities (Exhibit 16F).  Pursuant to Listing 1.04, the claimant had
> positive straight leg raise on both sides but she had normal diagnostic findings
> (Exhibits 5F/20, 12F/37-38, 16F).  The claimant's diagnostic findings of her
> cervical spine then showed only mild degenerative changes with no stenosis
> (Exhibits 2F/5-6, 5F/21-22).  As for Listing 11.03, the claimant mainly only
> complained in 2012 of headaches; and she had normal EEGs and brain MRIs
> (Exhibits 3F/15, 5F/13, 18).  Pursuant to Listing 14.09, the claimant ha[d] normal
> clinical findings, including intact strength in her extremities (Exhibit 16F).

(TR 86).

Plaintiff argues that the ALJ's explanation is insufficient and confusing in that it contains very little discussion of and citation to the medical record, "it lacks the required reasoned explanation leading to the conclusion that all of her severe physical impairments did not meet any of the Listed Impairments," and it is unclear which of Plaintiff's severe impairments correspond with the Listings discussed and what criteria was used to analyze the listings. (Docket no. 17 at 20-21.) Plaintiff's argument lacks merit. For instance, it is readily apparent which severe impairment was analyzed by the ALJ with respect to each listing, i.e., one does not need medical knowledge (as Plaintiff suggests) to discern that Listing 1.02 (major dysfunction of a joint) corresponds with Plaintiff's bursitis of the right shoulder; Listing 1.04 (disorders of the spine) corresponds with Plaintiff's mild degenerative changes of the cervical spine; Listing 11.03 (non-convulsive epilepsy) corresponds with Plaintiff's migraines; and Listing 14.09 (inflammatory arthritis) corresponds with Plaintiff's chronic pain syndrome. Additionally, Plaintiff cites no authority for her suggestion that the ALJ needs to recite the criteria of each listing in his decision, and the Court finds none. Although the ALJ's explanation is brief, the undersigned finds that the ALJ sufficiently analyzed Plaintiff's severe impairments under the cited listings and that he explained and supported his findings with proper citations to the medical evidence.

Furthermore, "an ALJ is not required to consider every Listing or to consider Listings that the claimant 'clearly does not meet.'" *Sheeks v. Comm'r of Soc. Sec.*, 544 F. App'x 639, 641 (6th Cir. 2013). The proper inquiry in this instance is whether "the record 'raise[s] a substantial question as to whether [the claimant] could qualify as disabled' under a listing[; if so,] the ALJ should discuss that listing." *Sheeks*, 544 F. App'x at 641 (citing *Abbott v. Sullivan*,

905 F.2d 918, 925 (6th Cir. 1990)).  It is the claimant's burden to demonstrate that such a substantial question exists.  *Id*. at 642.

At the hearing, Plaintiff's counsel argued in a conclusory fashion that Plaintiff's impairments meet Listings 1.04(a) and 12.04.[1]  (TR 131.)  And in her brief, Plaintiff argues that the ALJ's characterization of her headaches is inapposite to the record.  (Docket no. 17 at 21-22.)  As Defendant points out, however, "[a] claimant must do more than point to evidence on which the ALJ could have based his finding to raise a 'substantial question' as to whether he has satisfied a listing.  Rather, the claimant must point to specific evidence that demonstrates he reasonably could meet or equal every requirement of the listing."  (Docket no. 18 at 21-22 (quoting *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432 (6th Cir. 2014) (citing *Sheeks,* 544 F. App'x at 641–42)).)  Plaintiff has not cited to specific record evidence, developed an argument, or offered any analysis to demonstrate that her ailments could meet or equal the requirements of any of the listings.  Again, Plaintiff has failed to meet her burden of proof in this matter.  Hence, the ALJ's step-three determination cannot constitute reversible error, and Plaintiff's Motion should be denied with regard to this issue.

### 3.    The ALJ's Assessment of Plaintiff's RFC

Plaintiff argues that the ALJ's RFC assessment "does not comply with Social Security rules and regulations."  (Docket no. 17 at 22-28.)  The RFC assessment is the Commissioner's ultimate finding about the claimant's ability to perform work-related activities.  Social Security Ruling (SSR) 96-5p, 1996 WL 374183, at *5 (July 2, 1996).  It is defined as the most, not the least, the claimant can do despite his impairments.  20 C.F.R. §§ 404.1545(a), 416.945(a).  The ALJ derives the RFC after considering the medical and other relevant evidence in the record.  *Id*. He must support the RFC by including a narrative discussion describing how the evidence

---

[1] Plaintiff does not challenge the ALJ's evaluation of Listing 12.04.

supports his conclusions and providing citations to specific medical facts and nonmedical evidence. SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). In determining the RFC, the ALJ must discuss the claimant's ability to perform sustained work activities in an ordinary setting on a regular and continuing basis. *Id.* "The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.* The ALJ may adopt an opinion of a medical or nonmedical source in whole or in part if he finds that it is supported by and not inconsistent with the other substantial evidence of record. However, at all times the ultimate responsibility for fashioning the RFC rests with the ALJ, who has an obligation to determine the RFC based on the evidence he finds credible.

As is the case with many of the Social Security briefs written and submitted to this court by Plaintiff's counsel, Plaintiff's specific arguments regarding the ALJ's RFC assessment are prefaced by several cursory, conclusory arguments. (Docket no. 17 at 23-25.) For example, Plaintiff argues that the "RFC does not comply with the applicable regulations, as it does not accurately reflect the Plaintiff's impairments;" "[t]he RFC . . . is not supported by substantial evidence as needed to conclude that the Plaintiff is able to perform sedentary work;" and "the RFC discussion did not specify the functions that [Plaintiff] is capable of performing as required." (*Id.*) These arguments, however, are completely undeveloped and will therefore not be addressed by this Court, as "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (citation and internal quotation marks omitted).

Plaintiff also argues, in conclusory fashion, that the ALJ's RFC assessment does not meet the narrative discussion requirement of SSR 96-8p. (Docket no. 17 at 27-28.) To the contrary, the ALJ, after providing a thorough, detailed summary of Plaintiff's hearing testimony and the medical evidence, engaged in the following discussion with regard to Plaintiff's physical impairments:

> [T]he claimant is limited to sedentary work with no work on uneven surfaces and use of a can because of her back pain due to chronic pain syndrome that radiates into her lower extremities (Exhibits 3F/7, 13-14, 4F/4-5, 6F/7-8, 9F/1-2, 5-6, 12F/62-71, Hearing Testimony). At the consultative examination, Dr. Salomon found that the claimant had positive straight leg raise on both sides (Exhibit 16F). The claimant is then limited to sedentary work with occasional bending and twisting at the neck due to the degenerative changes and decreased range of motion in her neck (Exhibits 3F/7, 13-14, 4F/4-5, 6F/7-8, 9F/1-2, 5-6, 12F/62-71, 16F, Hearing Testimony). The claimant has postural restrictions as well due to the decreased range of motion in her back and neck (Exhibits 5F/5-7, 6F/3-4, 7F/3-4, 16F, Hearing Testimony). The claimant can only occasionally reach overhead with her right shoulder because of residuals from the bursitis (Exhibits 7F/6-7, 10-11, Hearing Testimony). The claimant can only frequently handle and finger because of the degenerative changes in her cervical spine and chronic pain syndrome that can cause some impairment in fine manipulation. The claimant has environmental restrictions because of her chronic pain syndrome that is exacerbated in certain conditions (Hearing Testimony). The claimant is further limited to sedentary work because of her diminished endurance due to migraines (Exhibits 3F/2-4, 4F/2, 4-5, 5F/2-4, 7F/10-11, 9F/1-2.)

(TR 94.) Subsequently, the ALJ engaged in a similar narrative discussion with regard to Plaintiff's mental impairments. (TR 94-95.) The undersigned concludes that the narrative discussions that the ALJ incorporated into his decision are more than sufficient to satisfy the requirements of SSR 96-8p, particularly in light of the undeveloped nature of Plaintiff's argument on the issue.

Next, Plaintiff specifically argues that the ALJ erred by failing to include the standing, walking, and sitting limitations that he assessed as part of Plaintiff's RFC in the hypothetical question to the VE. (Docket no. 17 at 25-26.) In the RFC assessment, the ALJ states that

Plaintiff "has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), as the claimant can lift and/or carry 10 pounds occasionally; stand and/or walk for 2 hours in an 8-hour workday; and sit for 6 hours in an 8-hour workday." (TR 88.) In the hypothetical interrogatory to the VE, the ALJ did not specify the hypothetical individual's ability to stand, walk, or sit; he merely stated that the hypothetical individual "has the residual functional capacity (RFC) to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a)." (TR 332.) Plaintiff asserts that this omission is erroneous because while the regulations (20 CFR 404.1567(a) and 416.967(a)) define a sedentary job as one that involves sitting and an occasional amount of walking and standing, they do not specify a certain amount of time of standing, walking, or sitting like the ALJ did in the RFC. (Docket no. 17 at 25-26.) Thus, Plaintiff argues, the specific standing, walking, and sitting limitations assessed by the ALJ in determining Plaintiff's RFC should have been included in the hypothetical to the VE. (*Id*.)

The Social Security Administration (SSA) has specified, however, that "[j]obs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 'Occasionally' means occurring from very little up to one- third of the time, and would generally total no more than about 2 hours of an 8-hour workday. Sitting would generally total about 6 hours of an 8-hour workday." *Titles II & XVI: Determining Capability to Do Other Work-- Implications of A Residual Functional Capacity for Less Than A Full Range of Sedentary Work*, SSR 96-9p, 1996 WL 374185, at *3 (S.S.A. July 2, 1996). The SSA has further specified that the term "sedentary" has the same meaning under the Social Security Act as it has under the Dictionary of Occupational Titles (DOT). *Policy Interpretation Ruling: Titles II & XVI: Use of Vocational Expert & Vocational Specialist Evidence, & Other Reliable Occupational Info. in*

*Disability Decisions*, SSR 00-4p, 2000 WL 1898704, at *3 (S.S.A. Dec. 4, 2000). Here, the VE indicated that his interrogatory responses were consistent with the DOT. (TR 333.) Accordingly, the ALJ's failure to restate the definition of sedentary work in his hypothetical question to the VE as he did in his RFC does not constitute reversible error.

Lastly, Plaintiff takes issue with the limitation assessed by the ALJ in the RFC that Plaintiff "needs the ability to stand for ten minutes at a time at thirty minute intervals." Plaintiff argues that this limitation is confusing and that the ALJ's decision does not indicate what medical evidence it is based upon. (Docket no. 17 at 25.) Defendant persuasively argues that the RFC can be based on both medical and non-medical evidence, and here, this limitation is seemingly based upon Plaintiff's own testimony that she can stand for 5 to 20 minutes at a time and sit for 5 to 25 minutes at a time. (*See* docket no. 18 at 25 (citing 20 C.F.R. §§ 404.1545(a), 416.945(a)).) In any event, the Sixth Circuit has held that "[a]lthough a function-by-function analysis is desirable, SSR 96-8p does not require ALJs to produce such a detailed statement in writing." *Delgado v. Comm'r of Soc Sec.*, 30 F. App'x 542, 547-48 (6th Cir. 2002) (quoting *Bencivengo v. Comm'r of Soc. Sec.*, No. 00-1995, 251 F.3d 153 (Table) (3d Cir. Dec. 19, 2000)). Accordingly, the ALJ's failure to specify the evidence upon which this limitation is based does not warrant remand.

Plaintiff also argues that the ALJ committed a significant error with regard to this limitation by omitting the phrase "at a time" in the hypothetical question to the VE. (Docket no. 17 at 26.) She claims that "[o]ne could find that having the ability to 'stand for ten minutes at a time at thirty minute intervals' requires a different physical exertion than merely having to 'stand for ten minutes at thirty minute intervals.'" (*Id*. at 26-27.) The undersigned disagrees with Plaintiff and finds that this limitation stated in the RFC assessment is substantially similar or

identical to the limitation stated in the hypothetical question to the VE. Plaintiff's argument in this regard, while clever, is merely a matter of semantics, and it should be rejected.

Moreover, to the extent that Plaintiff argues that this limitation is confusing or vague, this argument is waived, as she did not object to or seek clarification of this limitation as stated in the hypothetical question at the hearing level. *See Drake v. Colvin*, No. 1:13cv694, 2014 WL 4659487, at *4-5 (M.D.N.C. Sept. 17, 2014) (citing *Howard v. Astrue,* 330 F. App'x 128, 130 (9th Cir. 2009)) (plaintiff's failure to object to the form of ALJ's hypothetical question at the hearing level constitutes waiver of the right to litigate the issue in court). *See also Bechtold v. Massanari,* 152 F.Supp.2d 1340, 1347 (M.D. Fla. 2001) ("[W]hen squarely presented with an opportunity to object to the characterization by the administrative law judge of the nature of her past relevant employment, [the plaintiff] failed to do so. Such failure constitutes a waiver of her right to raise the argument before this Court at this time."). The ALJ's assessment of Plaintiff's RFC is supported by substantial evidence, and it should not be disturbed.

## VI. CONCLUSION

For the reasons stated herein, the court should **DENY** Plaintiff's Motion for Summary Judgment (docket no. 17) and **GRANT** Defendant's Motion for Summary Judgment (docket no. 18).

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard*

*v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: August 7, 2017          s/ Mona K. Majzoub
                               MONA K. MAJZOUB
                               UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated: August 7, 2017          s/ Leanne Hosking
                               Case Manager Generalist